UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

THOMAS SEAMAN,

Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

Defendant.

Case No. C09-5353FDB-KLS

REPORT AND RECOMMENDATION

Noted for May 14, 2010

Plaintiff, Thomas Seaman, has brought this matter for judicial review of the denial of his applications for disabled widower's and supplemental security income ("SSI") benefits. This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule MJR 4(a)(4) and as authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261 (1976). After reviewing the parties' briefs and the remaining record, the undersigned submits the following Report and Recommendation for the Court's review.

FACTUAL AND PROCEDURAL HISTORY

Plaintiff currently is 57 years old.[1] Tr. 43. He has a high school education and past relevant work experience as a carpenter, yacht builder, painter, and cabinet maker. Tr. 67, 72, 86, 421.

[1] Plaintiff's date of birth has been redacted in accordance with the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

On July 28, 2003, plaintiff filed applications for disabled widower's and SSI benefits, alleging disability as of July 8, 2000, due to a left arm injury/reconstructed left arm and elbow hinge. Tr. 60-62, 66, 75, 411. His applications were denied initially and on reconsideration. Tr. 43-44, 46, 50, 411. A hearing was held before an administrative law judge ("ALJ") on September 27, 2006, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert. Tr. 357-402.

On October 19, 2006, the ALJ issued a decision, in which he determined plaintiff to be capable of performing other work existing in significant numbers in the national economy, and therefore to be not disabled. Tr. 18-29. Plaintiff's request for review of that decision was denied by the Appeals Council, making the ALJ's decision the Commissioner's final decision. Tr. 6; 20 C.F.R. § 404.981, § 416.1481. Plaintiff appealed that decision to this Court, which remanded the matter to the Commissioner for further administrative proceedings. Tr. 411, 445-46.

Upon remand from the Court, the Appeals Council remanded the matter to another ALJ, who held a second hearing on January 22, 2009, at which plaintiff, represented by counsel, appeared and testified, as did a different vocational expert. Tr. 447-50, 604-41. On February 18, 2009, the second ALJ issued a decision, in which he determined that while plaintiff had "met the non-disability requirements for disabled widower's benefits,"[2] he did not meet the requirements for establishing disability, finding specifically in relevant part:

---

[2] As noted by the ALJ, to be entitled to disabled widower's benefits, plaintiff must establish he: (1) was "the widower of the deceased worker"; (2) had "attained the age of 50"; (3) was unmarried, unless one of the exceptions set forth in 20 C.F.R. § 404.335(e) applies; and (4) had "a disability that began before the end of the prescribed period." Tr. 412; see also 42 U.S.C. § 423(d)(1)(A); Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (disability defined as inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for continuous period of not less than 12 months); 20 C.F.R. §§ 404.315, 404.320, 404.335, 404.336. "The prescribed period ends with the month before the month in which the claimant attains age 60, or, if earlier, either seven years after the [deceased] worker's death, or seven years after the widower was last entitled to survivor's benefits, whichever is later." Tr. 412; 20 C.F.R. § 404.335(c). In this case, also as noted by the ALJ, plaintiff's prescribed

(1) at step one of the sequential disability evaluation process,[3] plaintiff had not engaged in substantial gainful activity since his alleged onset date of disability;

(2) at step two, plaintiff had "severe" impairments consisting of a history of fractures of left elbow and humerus status-post surgical repair, and low back pain with L5-S1 broad-based protrusion and facet degeneration;

(3) at step three, none of plaintiff's impairments met or equaled the criteria of any of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1;

(4) after step three but before step four, plaintiff had the residual functional capacity to perform a limited range of light exertional work, with certain additional non-exertional restrictions;

(5) at step four, plaintiff was unable to perform his past relevant work; and

(6) at step five, plaintiff was capable of performing other jobs existing in significant numbers in the national economy.

Tr. 411-23. It does not appear from the record that the Appeals Council assumed jurisdiction of the case. 20 C.F.R. § 404.984, § 416.1484. The ALJ's decision thus became the Commissioner's final decision after sixty days. Id.

On June 15, 2009, plaintiff filed a complaint in this Court seeking review of the ALJ's decision. (Dkt. #1-#4). The administrative record was filed with the Court on October 1, 2009. (Dkt. #12). Plaintiff argues the ALJ's decision should be reversed and remanded to the Commissioner for an award of benefits for the following reasons:

(a) the ALJ erred in evaluating the opinion of Jeffreys D. Albright, M.D., an examining physician;

(b) the ALJ erred in evaluating the lay witness evidence provided by Linda McAfee, plaintiff's wife; and

---

period began on February 28, 2002, the date his former spouse died, and thus he had to establish his disability began on or prior to February 28, 2009. Tr. 412.

[3] The Commissioner employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920. If the claimant is found disabled or not disabled at any particular step, the disability determination is made at that step, and the sequential evaluation process ends. Id.

(c) the ALJ erred in finding plaintiff capable of performing other work existing in significant numbers in the national economy.

The undersigned agrees the ALJ erred in determining plaintiff to be not disabled, but, for the reasons set forth below, recommends that while the ALJ's decision should be reversed, this matter should be remanded to the Commissioner for further administrative proceedings. Although oral argument has been requested in this matter, the undersigned finds such argument to be unnecessary.

DISCUSSION

This Court must uphold the Commissioner's determination that plaintiff is not disabled if the Commissioner applied the proper legal standard and there is substantial evidence in the record as a whole to support the decision. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the Court must uphold the Commissioner's decision. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

I. The ALJ's Evaluation of Dr. Albright's Medical Opinion

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the

Social Security Administration, 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id. The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31. However, the ALJ "need not discuss all evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. Lester, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately

supported by clinical findings" or "by the record as a whole." Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1195 (9th Cir. 2004); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

In early April 2005, plaintiff was examined by Jeffreys D. Albright, M.D., who gave a diagnosis of "[c]hronic pain issues and disability . . . with a history of a previous open fracture of the left elbow with neurological evidence of some change of function in the radial nerve." Tr. 301. Dr. Albright also opined in relevant part as follows:

> With respect to his ability to work, I think that he certainly does have some degree of disability. Based on his left elbow function, I think that he would be limited to light duty. I think that he would not be able to use his left upper extremity for anything above and beyond sedentary light holding of objects weighing less than one pound in a situation where he is not required to use the left elbow for repetitive motion. I think these are realistic limitations. The patient has seen a pain specialist in the past without significant improvement.
>
> I do not feel that I have anything else further to offer the patient at this point in time. I do feel that this represents a chronic situation. It does certainly seem appropriate that he would not be able to go back to his job at the time of injury, which was that of a construction worker, as he is certainly not able to do normal activities using the left hand.

Id.

In early June 2005, Dr. Albright completed a questionnaire sent to him by plaintiff's attorney, in which he opined – based on his early April 2005 examination – that plaintiff had symptoms of chronic left elbow pain, numbness, "shooting pains to the neck," and back pain, which had lasted or could be expected to last at least 12 months, but which would not "tend to

degenerate or deteriorate over time." Tr. 293. Dr. Albright indicated it was "reasonable to expect" that plaintiff "would experience substantial difficulty with stamina, pain or fatigue" and "would need to work at a reduced work pace," if he worked "full time, eight hours a day, at the light or sedentary levels of exertion." Tr. 293-94 (emphasis in original). On the other hand, Dr. Albright also indicated it was not likely that one or more of his "health problems would be made worse" if plaintiff performed such work. Tr. 294.

Elsewhere on that form, Dr. Albright indicated that plaintiff's "experience of symptoms" would be "severe enough" to "often" interfere with his attention and concentration. Id. In addition, Dr. Albright opined that there were no limitations on plaintiff's ability to stand, walk or sit during an eight-hour day, and that he would not need to alternate between or shift at will from standing/walking to sitting, or to lie down at unpredictable intervals during a work shift. Tr. 296. However, Dr. Albright did find plaintiff would be unable to climb ladders, and could twist, bend, crouch, and climb stairs only occasionally. Tr. 297. Plaintiff's ability to reach, handle, finger, feel, and push/pull on his left side would be affected as well. Id.

Plaintiff, furthermore, was limited by Dr. Albright from lifting no more than one pound secondary to left elbow chronic pain, with "no repetitive motion" involving his left arm. Tr. 297, 299. He also felt plaintiff should avoid concentrated exposure to hazards such as machinery and heights, should perform no crawling also secondary elbow pain and would miss work "[a]bout twice a month" due to his "impairments or treatment." Tr. 298. Lastly, Dr. Albright opined that plaintiff had been continuously unable to work since July 8, 2000. Tr. 299.

With respect to Dr. Albright's findings and opinions, the ALJ found in relevant part:

> The claimant saw Jeffreys Albright, MD, in April 2005 for an orthopedic opinion regarding his left elbow pain. Dr. Albright found the claimant's left elbow had limited range of motion, but there was full range of motion in his wrist and shoulder. Following examination, he opined that the claimant

> would be limited to light duty with some additional limitations on his left upper extremity. . . .

Tr. 416. As noted above, the ALJ found that plaintiff was capable of performing "**a limited range of light exertional level work**," and more specifically that:

> **. . . He is able to lift and carry ten pounds frequently and twenty pounds occasionally. He is able to sit up to six hours in an eight-hour workday. He is able to stand and walk up to six hours in an eight-hour workday. He is able to frequently stoop, crouch, kneel, and balance. He is limited to no more than occasional crawling and climbing ramps and stairs. He cannot climb ladders, ropes, or scaffolds. He can occasionally reach with his left, non-dominant arm, with no overhead reaching with that arm. Any lifting would primarily be done with the right arm with some assistance with the left arm.**

Tr. 118 (emphasis in original). Plaintiff argues the ALJ erred here, because while these findings do not include all of the functional limitations found by Dr. Albright, the ALJ failed to give any reasons for rejecting those he did not adopt. The undersigned agrees.

Because Dr. Albright is an examining physician, the ALJ at the very least was required to provide specific and legitimate reasons for not adopting his medical opinion. Defendant counters that the ALJ properly found plaintiff's ability to perform a limited range of light exertional work was consistent with Dr. Albright's "central opinion" restricting plaintiff to light duty work. (Dkt. #18, p. 7). Defendant argues the ALJ was not required to adopt the more restrictive limitations Dr. Albright found – such as, no lifting over one pound or performing repetitive motion with the left hand and being absent from work approximately twice a month – because he considered the opinions of other medical sources in the record. But nowhere in his opinion did the ALJ state he was discounting Dr. Albright's medical opinion on this basis, nor can the ALJ's absolute silence on the issue be viewed as an implied reliance on that basis.

Defendant also urges the Court to find no error on the part of the ALJ, because the ALJ provided a "comparatively longer summary and discussion of other medical sources who weigh

in on Plaintiff's disability rating." (Dkt. #18, p. 10). Again, however, any such summary and/or discussion of other medical sources sheds no light on how the ALJ may, or may not have, dealt with Dr. Albright's own medical opinion. It may very well be, as defendant asserts, that in the end such other medical evidence would outweigh the more restrictive limitations found by Dr. Albright. But without any actual analysis or interpretation of those limitations by the ALJ, it is impossible to determine whether the ALJ properly made that balancing determination. To that extent, therefore, the ALJ erred.

II. The ALJ's Evaluation of Ms. McAfee's Statements

Lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must take into account," unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001). In rejecting lay testimony, the ALJ need not cite the specific record as long as "arguably germane reasons" for dismissing the testimony are noted, even though the ALJ does "not clearly link his determination to those reasons," and substantial evidence supports the ALJ's decision. Id. at 512. The ALJ also may "draw inferences logically flowing from the evidence." Sample, 694 F.2d at 642.

The record contains written statements from plaintiff's wife, Linda McAfee, containing her observations of plaintiff's symptoms and limitations. See Tr. 233-34, 236-43, 465-71. The ALJ noted the written statements provided by Ms. McAfee and other lay witnesses in the record, and then went on to find as follows in regard to those statements overall:

> The undersigned has considered these statements but does not find them fully credible or convincing. The claimant's reported symptoms and the behavior he exhibits is not sufficient to establish disability. The third party statements reflect subjective complaints, not objective evidence. Furthermore, none of the witnesses has been trained to critically evaluate whether the claimant's complaints are exaggerated or inconsistent with objective evidence. In the

> present case, there is more reliable evidence of record from medical professionals who are trained to evaluate impairments and their impact on functional capacity.

Tr. 420. Plaintiff argues that none of these reasons for rejecting Ms. McAfee's statements – in particular, her statement that plaintiff had difficulty sitting or standing for a long period of time – are acceptable. The undersigned disagrees.

The undersigned does find that not all of the reasons the ALJ gave for rejecting this lay witness evidence were proper. For example, lay witness statements from non-medical sources by definition do not constitute objective medical evidence. Yet, as noted above, the ALJ still is required to consider and give germane reasons for rejecting them. Nor is there any requirement that a lay witness be "trained to critically evaluate" whether or not a claimant is malingering or how his or her subjective complaints or observed limitations stack up against objective medical evidence in the record. Indeed, such witnesses are likely to have no access to that evidence and so cannot be faulted for not evaluating it.

Plaintiff asserts it was improper for the ALJ to discount Ms. McAfee's statements on the basis that they were less reliable or inconsistent with evidence obtained from the medical opinion sources in the record. There is some question as to the validity of doing so in the Ninth Circuit. As pointed out by defendant, the Court of Appeals did hold in Lewis that the ALJ may discount lay witness testimony if it conflicts with the medical evidence in the record. See 236 F.3d at 511; see also Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005) (inconsistency with medical evidence constitutes germane reason); Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984) (proper to discount lay testimony that conflicts with medical evidence). In a more recent case, however, the Ninth Circuit came to the opposite conclusion, holding that it was improper for the testimony of the claimant's wife in that case to be discredited as being "not supported by medical

evidence in the record." See Bruce v. Astrue, 557 F.3d 1113 (9th Cir. 2009).

In so holding, the Ninth Circuit relied on its prior decision in Smolen v. Chater, 80 F.3d 1273 (9th Cir. 1996), which held that the ALJ erred in rejecting the testimony of the claimant's family on the basis that medical records did not corroborate the claimant's symptoms. The Court of Appeals explained that in so doing, the ALJ had violated the Commissioner's directive "to consider the testimony of lay witnesses where the claimant's alleged symptoms are unsupported by her medical records." Bruce, 557 .3d at 1116 (citing 80 F.3d at 1289) (emphasis in original). The decision in Bruce, though, did not address the three earlier decisions in Lewis, Bayliss and Vincent, which, as just noted, expressly held otherwise.

Accordingly, although Bruce is the Ninth Circuit's most recent pronouncement on this issue, given that no mention of Lewis, Bayliss or Vincent was made in that case, and that neither of the holdings in those earlier decisions were expressly reversed, it is not at all clear whether discounting lay witness evidence on the basis that it is not supported by the objective medical evidence in the record is no longer allowed. Nevertheless, this apparent conflict in Ninth Circuit precedent does not prevent the Court from upholding the ALJ's determination to discount Ms. McAfee's statements, as the undersigned finds it was proper for the ALJ to do so on the basis that they merely reflected plaintiff's subjective complaints.

As defendant points out, plaintiff has not challenged the ALJ's determination that his own statements regarding "the intensity, persistence and limiting effects of" his symptoms were "not fully credible" (Tr. 118), or any of the several reasons the ALJ provided in support thereof (see Tr. 118-20). In addition, where the ALJ properly rejects a claimant's subjective complaints and the lay witness's testimony is similar to those complaints, the ALJ's decision to reject that

testimony on the basis of the similarity is proper.[4] See Valentine v. Commissioner Social Security Admin., 574 F.3d 685, 694 (9th Cir. 2009).

III. The ALJ's Step Five Findings

If a disability determination "cannot be made on the basis of medical factors alone at step three of the evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184 *2. A claimant's residual functional capacity ("RFC") assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. Id. It thus is what the claimant "can still do despite his or her limitations." Id.

A claimant's residual functional capacity is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. Id. However, a claimant's inability to work must result from his or her "physical or mental impairment(s)." Id. Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id. In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

As noted above, the ALJ assessed plaintiff with the following residual functional

---

[4] Plaintiff states he has not challenged the ALJ's credibility determination because: (1) "in most cases the Court will uphold an ALJ's credibility" determination, "even where parts of that [determination] are faulty"; (2) challenging the credibility determination uses both counsel's and the Court's time; and (3) doing so "will not be dispositive in the case," particularly where "the ALJ has committed clear legal error which should result in remand regardless of" the ALJ's credibility findings. (Dkt. #19, p. 2-3). Although the concern that the Court's time not be unnecessarily expended is appreciated, this Court has remanded Social Security cases in the past at least in part on the basis of a faulty credibility determination. But regardless of plaintiff's position concerning the ultimate utility of challenging an ALJ's adverse credibility determination, the fact is plaintiff has not challenged it in this case, and therefore that unchallenged determination remains a legitimate basis upon which the ALJ relied to also discount the credibility of his wife's lay witness statements.

capacity:

> **. . . [T]he claimant has the residual functional capacity to perform a limited range of light exertional level work. He is able to lift and carry ten pounds frequently and twenty pounds occasionally. He is able to sit up to six hours in an eight-hour workday. He is able to stand and walk up to six hours in an eight-hour workday. He is able to frequently stoop, crouch, kneel, and balance. He is limited to no more than occasional crawling and climbing ramps and stairs. He cannot climb ladders, ropes, or scaffolds. He can occasionally reach with his left, non-dominant arm, with no overhead reaching with that arm. Any lifting would primarily be done with the right arm with some assistance with the left arm.**

Tr. 118. Plaintiff argues that in light of the ALJ's failure to provide any reasons for rejecting the functional limitations found by Dr. Albright, the ALJ's RFC assessment also was improper. The undersigned agrees that because the ALJ erred in evaluating the medical evidence provided by Dr. Albright, it is far from clear whether the above assessment of plaintiff's residual functional capacity accurately reflect all of his limitations.

If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 404.1520(d), (e), § 416.920(d), (e). The ALJ can do this through the testimony of a vocational expert or by reference to the Commissioner's Medical-Vocational Guidelines (the "Grids"). Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000).

An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ. Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984). The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988). Accordingly, the ALJ's description of the claimant's

disability "must be accurate, detailed, and supported by the medical record." Id. (citations omitted). The ALJ, however, may omit from that description those limitations he or she finds do not exist. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

At the second hearing, the ALJ posed a hypothetical question to the vocational expert that contained substantially the same limitations as those the ALJ included in his residual functional capacity assessment. Tr. 631-32. In response to that question, the vocational expert testified that an individual with those limitations, and who had the same age, education and work history as plaintiff, was capable of performing the jobs of sales attendant (Dictionary of Occupational Titles ("DOT") 299.677-010) and surveillance systems monitor (DOT 379.367-010). Tr. 631-35. Based on the vocational expert's testimony, the ALJ found plaintiff to be capable of performing other jobs existing in significant numbers in the national economy. Tr. 422-23.

A. Sales Attendant Job

The vocational expert testified that "some sales attendant jobs do not . . . involve more than occasional [reaching] with the non-dominant hand." Tr. 633. She went on to testify that although the DOT defined those jobs as requiring frequent reaching and handling, in her own "professional judgment . . . you can use the dominant hand and use the non-dominant hand on an occasional basis" – i.e., for "up to a third of the day" – even though "there are times when you have to use both [hands] bilaterally." Tr. 635. The vocational expert further testified that while she did not know whether sales attendant jobs "as they exist in the national economy . . . more frequently also have a cashiering component" – which the vocational expert previously had "ruled out because of their reaching and handling requirements – such a job "[o]f course" could involve that type of component. Tr. 633, 637.

Plaintiff argues the ALJ erred in relying on the vocational expert's testimony to find him

capable of performing the job of sales attendant, because the vocational expert failed to provide persuasive evidence to support her testimony's deviation from the DOT's description of that job. The undersigned agrees. Vocational expert testimony that contradicts the information contained in the DOT may be relied on by the ALJ to find a claimant capable of performing other jobs, "but only insofar as the record contains persuasive evidence to support the deviation." Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995).

The record does not contain such evidence in this case. As noted above, the vocational expert testified that some sales attendant jobs do not involve more than occasional reaching with the non-dominant hand, and that those jobs "[o]f course" could involve a cashiering component, which she specifically "ruled out" for an individual such as plaintiff because of the reaching and handling requirements. Given this ambiguous testimony – that is, that only some sales attendant jobs, which may or may not involve a cashiering component, allow for occasional reaching with the non-dominant hand – it is impossible to discern from the record whether significant numbers of those jobs exist in the national economy. Indeed, the number of sales attendant jobs that the vocational expert testified existed in the region and national economies was based solely on the job as defined in the DOT, without "any adjustment . . . for the left arm." Tr. 634.

Defendant argues, apparently, that the vocational expert's testimony is in fact consistent with the sales attendant job definition contained in the DOT, noting that the DOT describes that job as requiring the performance of "any combination" of a number of duties, several of which do not involve reaching at all. DOT 299.677-010. These, defendant asserts, include aiding in the location of merchandise, answering questions, providing information, directing or escorting to fitting or dressing rooms or to the cashier, and inventorying stock. Id. Aside from the fact that some of these tasks – such as locating and inventorying stock – may indeed involve the ability to

reach, the requirement that an individual be able to perform "any combination" of various tasks, including those – such as obtaining and keeping merchandise in order – that certainly appear to require reaching, means the DOT's description suffers from the same problem with ambiguity as does the vocational expert's testimony, at least in regard to non-bilateral reaching.

B. Surveillance Systems Monitor

Plaintiff argues that because the job of surveillance systems monitor involves sedentary work and is the only job identified by the vocational expert available to him, and because he is an individual closely approaching advanced age, the ALJ did not meet his burden of producing evidence of jobs existing in significant numbers in the national economy. Plaintiff relies, albeit mistakenly, on the Ninth Circuit's decision in Distasio v. Shalala, 47 F.3d 348 (9th Cir. 1995), to support his argument here. Distasio, however, is factually distinguishable from the case at hand. In Distasio, as plaintiff notes, the vocational expert expressly testified that the claimant "could only perform what she believed were sedentary jobs," despite the ALJ's determination that the claimant "was capable of light work, but with limitations." Id. at 349.

Here, though, the vocational expert, as noted above, testified that plaintiff was capable of performing the job of sales attendant, which involves light work. It is true, as discussed above, that because of the ambiguity of the vocational expert's testimony, that testimony did not provide persuasive evidence sufficient for the ALJ to deviate from the DOT. That does not mean further questioning would not produce the necessary specificity regarding the numbers of sales attendant jobs requiring no more than occasional use of the non-dominant hand. Indeed, this is one of the bases for remanding this matter for further administrative proceedings.

The vocational expert, furthermore, testified that the sales attendant and surveillance systems monitor jobs were merely "examples" of jobs existing in the national economy that fit

the hypothetical question. Tr. 634. Accordingly, Distasio does not mandate a determination of disability in this case as argued by plaintiff. On the other hand, as discussed above, the ALJ did err in evaluating Dr. Albright's medical opinion and thus in assessing plaintiff's RFC. For the same reasons, therefore, it is unclear whether the hypothetical question the ALJ posed accurately describes all of plaintiff's limitations. As such, remand is appropriate both on this basis and, as just noted, in light of the insufficient testimonial evidence provided by the vocational expert in regard to the sales attendant job.

IV. This Matter Should Be Remanded For Further Administrative Proceedings

The Court may remand this case "either for additional evidence and findings or to award benefits." Smolen, 80 F.3d at 1292. Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." Id.

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002).

Because issues still remain regarding the medical evidence provided by Dr. Albright, plaintiff's residual functional capacity and her ability to perform other jobs existing in significant numbers in the national economy, remanding this matter to the Commissioner for further administrative proceedings is appropriate.

CONCLUSION

Based on the foregoing discussion, the Court should find the ALJ improperly concluded plaintiff was not disabled, and should reverse the ALJ's decision and remand this matter to the Commissioner for further administrative proceedings in accordance with the findings contained herein.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **May 14, 2010**, as noted in the caption.

DATED this 19th day of April, 2010.

Karen L. Strombom
United States Magistrate Judge